UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MEDICINE SHOPPE INTERNATIONAL, INC., | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 4:07-CV-642 (CEJ) ) |
| GARY STOPA, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants' motion for summary judgment. Plaintiff has filed a response in opposition to the motion and the issues are fully briefed.

Defendants Gary and Loretta Stopa operated defendant Middletown Apothecary, Inc., pursuant to a 1988 license agreement with plaintiff Medicine Shoppe International, Inc., (Medicine Shoppe).[1] The license agreement prohibited defendants from engaging in a similar business within a defined geographic area and established a monthly licensing fee based on a percentage of gross receipts. In October 2004, defendants opened "The Home Healthcare Store," located within the geographic area described by the license agreement. Plaintiff alleges that operation of this store violated the agreement's noncompetition provision and deprived plaintiff of licensing fees. Plaintiff filed suit asserting claims for breach of the license agreement, breach of the duty of good faith and fair dealing, and fraud.

---

[1] The parties' twenty-year license agreement expired on February 9, 2008.

## I. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

## II. Background

On February 9, 1988, defendants Gary and Loretta Stopa entered into a license agreement with plaintiff Medicine Shoppe for the right to operate the Middletown Apothecary in Middletown, New York, for a term of twenty years. Item VII of the agreement is entitled "Non-Competition" and states:

> **During the term of this Agreement, except pursuant to this Agreement or with the written consent of the Grantor, and for a period of two (2) years from the date of termination hereof, and within the License Area or within any other area in which any Medicine Shoppe or Medicine Shoppe Franchise operate, Licensee . . . <u>shall not engage in or become interested in the same or a substantially similar business as that covered by this Agreement</u>, including but not by way of limitation, the operation of a prescription pharmacy or prescription pharmacy department, directly or indirectly . . . . Nothing in this paragraph, however, shall be interpreted so as to prevent Licensee from practicing his profession as a Registered Pharmacist in any location other than the location covered by this Agreement provided that all other provisions of this License Agreement are complied with.**

(emphasis added). The Stopas' assigned License Area covered a geographic area with a radius of 2.07 miles from the Middletown Apothecary.

In October 2004 the Stopas opened the Home Healthcare Store at a location about three-quarters of a mile away from the Middletown Pharmacy. The Home Healthcare Store sells Durable Medical Equipment (DME) and Home Health Care Products (HHCP).[2] Some

---

[2] Durable Medical Equipment is medical equipment that can withstand repeated use, is primarily used to serve a medical purpose, is generally not useful to an individual in the absence of an illness or injury, and is appropriate for use in the home. 42 C.F.R. § 414.202. DME includes items such as hospital beds, oxygen tanks, and wheel chairs. The parties describe HHCP as non-reusable, medically-related items such as wound care kits, incontinence products, diabetes test strips, and enteral feeding supplies.

-3-

Medicine Shoppe pharmacies carry DME and HHCP; at various times, the Middletown Pharmacy sold "medically related items," such as foam collars, walkers, gauze pads, Band Aids and other first aid items, shower chairs, incontinence aids, diabetes strips and lancets, and diabetic socks.

On June 6, 2006, plaintiff sent a letter to the Stopas in which the Home Healthcare Store was identified as a substantially similar business operated in breach of the non-competition provision of the License Agreement. Plaintiff demanded that the Stopas immediately cease operating the Home Healthcare Store and provide license fees on all gross receipts at the store. The Stopas contend that they are not in violation of the License Agreement because the Home Healthcare store is not a substantially-similar business.

### III. Discussion

The License Agreement's choice-of-law provision states that it "shall be governed by and construed under and in accordance with" Missouri law. Under Missouri law, "[l]icense agreements are purely contractual in nature." Monsanto Co. v. Syngenta Seeds, Inc., 226 S.W.3d 227, 230 (Mo. Ct. App. 2007) (quoting Republic Eng'g & Mfg. Co. v. Moskovitz, 376 S.W.2d 649, 654 (Mo. Ct. App. 1964)). "The usual principles of contract law govern the construction of such agreements." Id. at 231. "The cardinal principle of contract interpretation is to ascertain the intention of the parties and to give effect to that intent." Dunn Indus. Group, Inc. v. City of Sugar Creek, 112 S.W.3d 421, 428 (Mo. 2003) (*en banc*). The terms

of a contract are read as a whole to determine the intention of the parties and are given their plain, ordinary, and usual meaning. Id. Additionally, each term of a contract is construed to avoid rendering other terms meaningless. Id. Intent is not to be determined merely by looking at isolated provisions not considered in the context of the entire agreement. Spirtas Co. v. Division Of Design & Const., 131 S.W.3d 411, 416 (Mo. Ct. App. 2004).

"In a contract case, summary judgment is appropriate where the language of the agreement is so clear and unambiguous that the meaning of the portion of the contract in dispute is so apparent that it may be ascertained from the four corners of the document." Zeiser v. Tajkarimi, 184 S.W.3d 128, 132 (Mo. Ct. App. 2006) (quoting Board of Educ. City of St. Louis v. State, 134 S.W.3d 689, 695 (Mo. Ct. App. 2004)). "Summary judgment is inappropriate in an action arising out of a contract, however, where the disputed contract language is ambiguous and parol evidence is required to interpret the contract and the parties' intent." Id. (quoting Northwest Plaza, LLC v. Michael-Glen, Inc., 102 S.W.3d 552, 557 (Mo. Ct. App. 2003)). Where a contract is ambiguous, then a question of fact arises as to the intent of the parties as to its meaning, and thus it is error to grant summary judgment. Id. at 132-33. The determination of the parties' intent must be left to the jury. Id.

The parties contend that the License Agreement is unambiguous, although they do not agree as to its meaning. Defendants contend that the subject matter of the License Agreement is a business

primarily engaged in dispensing prescription medications. The Home Healthcare Store, they argue, is not substantially similar because it is engaged in selling DME and HHCP and does not dispense prescription medications. Plaintiff counters that a factual dispute exists: namely, whether a business selling DME and HHCP is substantially similar to the business covered by the License Agreement.

The non-competition provision of the License Agreement states in relevant part that the defendants "shall not engage in or become interested in the same or a substantially similar business as that covered by this Agreement, including but not by way of limitation, the operation of a prescription pharmacy or prescription pharmacy department." Defendants contend that the phrase – "the operation of a prescription pharmacy or prescription pharmacy department" – imposes a limitation on "the same or substantially similar business." Defendants' construction ignores the intervening phrase – "including but not by way of limitation." This phrase conveys that "prescription pharmacy or prescription pharmacy department" are nonexclusive examples of a substantially similar business. Defendants have not established that they are entitled to judgment as a matter of law based solely upon the non-competition provision.

Defendants turn to the preamble of the License Agreement, which describes Medicine Shoppe as developing "a unique system and know-how for operating ethical <u>pharmacies</u>," and becoming "a recognized <u>pharmacy</u> group." (emphasis added). Defendants contend that the language of the preamble establishes that Medicine

Shoppe's business is the selling of pharmaceuticals and over-the-counter medications. However, as plaintiff notes, Section D of Item IV of the License Agreement addresses "Inventories, Supplies, Forms and Equipment" and provides that the licensee "shall use only vitamins, drugs, <u>and other merchandise</u> . . . which conform with standards of quality and appearance established by" plaintiff. (emphasis added). The term "merchandise" among the permissible inventory might reasonably be interpreted to cover the DME and HHCP at issue in this dispute. Defendants have thus failed to establish that they are entitled to judgment as a matter of law based upon the preamble of the License Agreement.

The parties ask the Court to examine certain provisions of the 1986 Uniform Franchise Offering Circular (UFOC)[3] and Medicine Shoppe's Operations Manual. If the parties are correct in their unanimous assertion that the License Agreement is unambiguous, consideration of these documents is foreclosed by the parol evidence rule. <u>See</u> <u>Silver Dollar City, Inc. v. Kitsmiller Const. Co., Inc.</u>, 931 S.W.2d 909, 914 (Mo. Ct. App. 1996) ("It is well established in Missouri that the parol evidence rule bars the admission of extrinsic evidence unless a contract is ambiguous.") To the extent that the parties believe that the UFOC and Operations Manual are part of the License Agreement, that position would

---

[3]New York is one of several states that has adopted a disclosure requirement pursuant to which an entity offering to sell a franchise must first register an offering prospectus. <u>See</u> N.Y. Gen. Bus. Law § 683.

-7-

appear to be foreclosed by the agreement's merger or integration provision.[4]

Contrary to the parties' assertion, the Court believes that the License Agreement is ambiguous with respect to the central issue: whether the parties intended to preclude defendants from operating within the license area a business that sells medically-related supplies in the absence of a pharmacy. Parol evidence may be required to determine the parties' intent and, thus, a genuine dispute of material fact exists precluding summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [Doc. #39] is **denied**.

**IT IS FURTHER ORDERED** that defendants' motion for extension of time to file reply memorandum [Doc. #45] is **granted**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 11th day of August, 2008.

---

[4] Entitled "Entire Agreement," the provision states: "This License Agreement contains the entire understanding of the parties, and no representations, inducements, promises or agreements, oral or otherwise, between the parties not embodied herein shall be given any force and effect. No representations or warranties except those contained herein have been made."